# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

CYNTHIA L. R.,[1]

    Plaintiff,

v.

ANDREW M. SAUL,
Commissioner of Social Security,[2]

    Defendant.

Case No. 2:19-cv-00416-AFM

**MEMORANDUM OPINION AND ORDER AFFIRMING DECISION OF THE COMMISSIONER**

Plaintiff filed this action seeking review of the Commissioner's final decision denying her application for supplemental security income. In accordance with the Court's case management order, the parties have filed memorandum briefs addressing the merits of the disputed issues. The matter is now ready for decision.

## BACKGROUND

In April 2015, Plaintiff applied for supplemental security income, alleging

---

[1] Plaintiff's name has been partially redacted in accordance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

[2] Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew M. Saul, Commissioner of the Social Security Administration, is substituted as the proper defendant in this action. *See* Fed. R. Civ. P. 25(d).

disability since September 12, 2012. Plaintiff's application was denied initially and upon reconsideration. (Administrative Record ["AR"] 117-131, 133-146.) A hearing took place on October 17, 2017 before an Administrative Law Judge ("ALJ"). Plaintiff, who was represented by counsel, and a vocational expert ("VE") testified at the hearing. (AR 66-98.)

In a decision dated March 12, 2018, the ALJ found that Plaintiff suffered from the following severe impairments: status post fractured left elbow; degenerative joint disease of the left elbow; left shoulder impingement syndrome; obesity; left trapezius and rhomboid strain; hypertension; bipolar disorder; depression; and anxiety. (AR 19-20.) The ALJ determined that Plaintiff's residual functional capacity ("RFC") included the ability to perform a range of medium work as follows: Plaintiff can lift up to 50 pounds occasionally and 25 pounds frequently; can sit for six hours in an eight-hour workday; can stand and/or walk for six hours in an eight-hour workday; can frequently handle, finger, and overhead reach with the non-dominant left upper extremity; cannot climb ladders, ropes, or scaffolds; can frequently climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; can frequently work around hazards; can occasionally work around dusts, fumes, gases, and poor ventilation; is limited to unskilled work of reasoning level one or two; and is limited to occasional contact with the public or co-workers. (AR 22.) Relying on the testimony of the VE, the ALJ concluded that Plaintiff could perform jobs existing in significant numbers in the national economy. Accordingly, the ALJ concluded that Plaintiff was not disabled. (AR 27-28.)

The Appeals Council subsequently denied Plaintiff's request for review (AR 1-6), rendering the ALJ's decision the final decision of the Commissioner.

## DISPUTED ISSUES

Plaintiff, who is proceeding pro per, has not presented any disputed issue with specificity sufficient for the Court to discern. Although Plaintiff makes a conclusory assertion that "Social Secuirt[y]'s own guidelines have not been followed," (ECF No.

19 at 1), she does not state which "guideline" has been ignored, nor does she identify any finding by the ALJ that she contends was made in violation of a guideline. Instead, Plaintiff makes the following assertions in support of her complaint: "Substantial medical and psychological records" prove that she has a combination of limitations "severe enough to prohibit employment"; she "refutes" the findings of Dr. Altman because his examination was inadequate; subsequent to the hearing she was diagnosed with fibromyalgia and bulging and herniated discs; the ALJ's determination that she can lift 50 pounds occasionally and 25 pounds frequently and stand six hours in an eight-hour day are "absurd" in light of the record; and it is impossible for her to perform the jobs identified by the VE. (ECF No. 1 at 2-4.)

The Court need not consider claims that Plaintiff fails to present with any specificity and that lack citation to evidence or legal authority. *See*, *e.g.*, *DeBerry v. Comm'r of Soc. Sec. Admin.*, 352 F. App'x 173, 176 (9th Cir. 2009) (declining to consider claim that ALJ failed properly to apply Social Security Ruling where claimant did not argue the issue "with any specificity" in her opening brief and failed to cite "any evidence or legal authority" in support of her position); *Nazarian v. Berryhill*, 2018 WL 2938581, at *3–4 (C.D. Cal. June 7, 2018) (finding plaintiff "provide[d] no specific argument regarding how the ALJ in this case specifically erred in such respect, and thus fail[ed] to persuade the Court that a remand is warranted on such conclusory grounds"). Nevertheless, the Court has liberally construed Plaintiff's memorandum in support of the complaint to raise the issues discussed below.

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014). Substantial evidence means "more than a mere scintilla" but less than a preponderance. *See*

*Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. This Court must review the record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Lingenfelter*, 504 F.3d at 1035. Where evidence is susceptible of more than one rational interpretation, the Commissioner's decision must be upheld. *See Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).

## DISCUSSION

### I. Medical Record

The ALJ summarized the relevant medical record. With regard to Plaintiff's mental impairments, the ALJ discussed Plaintiff's history of bipolar disorder with anxiety symptoms. (AR 23, citing AR 437.) In January 2015, Plaintiff sought treatment with the Los Angeles County Department of Mental Health. At the time, she reported feeling nervous and tense and said that she became easily irritated and frustrated with family and friends. Plaintiff isolated herself because she did not want to get angry at friends. (AR 443, 445.) She explained that she had been doing fairly well for three years while on medication, but after suffering renal failure in June 2014, Plaintiff stopped her medication. (AR 444, 459, 467.) During her mental status exam in January 2015, Plaintiff was unable to complete serial sevens and complained of constant "physical anxiety." (AR 470-471.)

Plaintiff was prescribed mood stabilizing medication (*see* AR 450-452, 459-460) and, by February 2015, reported that she was doing "good," felt "balanced," and her irritability and anxiety were gone. (AR 454, 485.) In March 2015, Plaintiff made good eye contact, her mood was euthymic without mood swings, and she reported less anxiety and restlessness. (AR 488, 658.) In April 2015, Plaintiff said that since starting the medication she did not feel anxious or irritable. In fact, she stated that

she had never felt better. She specifically denied depressive or manic symptoms. (AR 490.)

As the ALJ noted, Plaintiff continued to report feeling stable with medications and generally denied anxiety, irritability, racing thoughts, and mood swings. She began exercising at the gym and volunteering at her church school, which she continued to do into 2017. According to treatment notes, Plaintiff indicated that she tolerated her medications well. (AR 514, 516, 642, 643, 651, 655, 657.)

In June and July 2015, Plaintiff complained of depression and low motivation, but denied anxiety, negative thoughts, and irritability. (AR 647-648.) Plaintiff was prescribed Prozac for depression. In November 2015, Plaintiff reported that the medication was working, and she was doing better. (AR 707-708.) Likewise, in January 2016, Plaintiff reported feeling stable and without complaints. She was motivated, had no anxiety, and had no depressive symptoms. (AR 710.) She reported the same in March, June, and October 2016. (AR 710-711, 713, 715.) In January and April 2017, Plaintiff said she felt good emotionally and denied depression, panic attacks, and negative thoughts. Her sleep was good, and her anxiety was "under control." (AR 718, 719.) Plaintiff continued to teach on Sundays at church, which she enjoyed. (AR 642, 711-712, 715, 718.)

In the course of mental health treatment, Plaintiff reported having a strong support system through her church and having good relationship with her step daughter and her own children. She stated that she attended church multiple times a week. (*See* AR 476, 488, 640-641.)

Elena Gilman, M.D., completed a medical source statement in July 2017. Dr. Gilman indicated that she had seen Plaintiff every three months since March 2015. She diagnosed Plaintiff with bipolar disorder in remission and stated that Plaintiff's medications did not cause side-effects. (AR 722.) In Dr. Gilman's opinion, Plaintiff's mental impairment did not preclude her ability to understand, remember, or carry out short and simple instructions; perform activities within a schedule;

maintain regular attendance; sustain an ordinary routine without special supervision; work in coordination with others; make simple work-related decisions; interact appropriately with the general public; get alone with coworkers and peers; respond appropriately to changes in the work setting. (AR 723-724.). Dr. Gilman opined that the following abilities would be precluded for 5% of an eight-hour workday: Plaintiff's ability to understand, remember, and carry out detailed instructions; maintain attention and concentration for extended periods of time; complete a normal work day and work week without interruptions from psychologically based symptoms; perform at a consistent pace without an unreasonable number and length of rest periods; and accept instructions and respond appropriately to criticism from supervisors. (AR 723-724.). In addition, Dr. Gilman estimated that Plaintiff would be off task 10% of the work day, would be absent from work two days per month, and would be unable to complete an eight-hour work day three days per month. Last, Dr. Gilman opined that Plaintiff would perform her job on a sustained basis with only less than 50% efficiency. (AR 725.) At the same time, Dr. Gilman indicated that she did not believe that Plaintiff was unable to obtain and retain work in a competitive work setting of eight hours per day, five days per week for a continuous period of at least six months. (AR 725.)

The ALJ also discussed the opinions of the State agency physicians. Pamela Hawkins, Ph.D., opined that Plaintiff had mild restrictions of activities of daily living, moderate difficulties in maintaining concentration, persistence or pace, and no difficulties in maintaining social functioning. Dr. Hawkins indicated that Plaintiff was able to understand, remember, and carry out simple, unskilled tasks. (AR 125-129.) Elizabeth Covey, Psy.D., opined that Plaintiff had mild limitations in activities of daily living and in social functioning, and moderate limitations in maintaining concentration, persistence or pace. Dr. Covey agreed that Plaintiff was able to understand, remember, and carry out simple routine tasks. (AR 140-144.)

With regard to Plaintiff's physical impairments, the ALJ noted Plaintiff's history of hypertension, which has been controlled with medication since her renal failure in June 2104. (AR 422-430, 679-681, 692-693, 742, 767.) The ALJ also noted Plaintiff's history of obesity. (*See* AR 541, 581, 732, 768.)

In November 2015, Plaintiff fell while walking down the street and sustained a fracture to her left elbow. (AR 786.) By March 2016, however, Plaintiff's elbow pain was mostly resolved. (AR 780.) In June 2016, Plaintiff's left elbow had full range of motion with no swelling or redness. (AR 775.) Based upon a March 2017 x-ray, Plaintiff was diagnosed with a left elbow deformity and effusion which caused chronic elbow pain radiating along the entire left arm. (AR 739, 742, 809.)

In January 2016, Plaintiff complained of neck and back pain. (AR 783.) In March 2016, Plaintiff indicated her neck and back pain "comes and goes." (AR 780.) Examination revealed mild tenderness on the base of her cervical spine and left lower lateral back with palpation. Her range of motion was restricted secondary to pain. Plaintiff's motor strength was normal, and her sensory exam was intact. (AR 780-781.) X-rays revealed mild degenerative joint disease and spondylosis. Plaintiff was prescribed topical analgesics and Tylenol with codeine for pain. (AR 775-776, 781.)

In May 2017, Plaintiff was examined by Insoo Kim, M.D. Dr. Kim noted mild effusion of the left elbow joint with tenderness, but full range of motion. X-rays showed slight degenerative changes of the radial head of the elbow. Dr. Kim recommended steroid injection. (AR 808-811.) Plaintiff also complained of left shoulder pain. Treatment notes from August 2017 revealed tenderness in the subacromial space and left AC joint, mild limitation of range of motion with pain, and positive impingement of the left shoulder. While x-rays were within normal limits, Dr. Kim opined that Plaintiff had shoulder impingement syndrome and a possible rotator cuff tear. She recommended a trial of steroid injections to the left shoulder. (AR 806.)

Plaintiff underwent a consultative orthopedic examination in November 2017. Jeff Altman, M.D., found full pain-free range of motion of the neck, but noted mild to moderate tenderness along the left trapezius and left rhomboid musculature. Straight leg raise test was negative. Plaintiff had full range of motion of the left shoulder with slight tenderness in the bicipital groove and no tenderness to palpation at the acromioclavicular joint. Dr. Altman noted mild tenderness at the left lateral epicondyle and over the olecranon process. Plaintiff was able to perform pronation and supination as well as elbow flexion and extension. Plaintiff's sensation was intact to all digits, and her neurological examination was intact. (AR 814-819.) Dr. Altman opined that Plaintiff can lift and carry 50 pounds occasionally and 25 pounds frequently; can sit, stand, and walk without restriction; can frequently bend, crouch, kneel, crawl, and stoop; can frequently climb, balance, walk on uneven terrain or work at heights; has no overhead restrictions; can perform fine and gross manipulation without limits with her right hand and frequently with her left hand. (AR 819-820.)

The ALJ noted that both State agency physicians found Plaintiff's physical impairments to be non-severe, although one noted possible limitations to temperature extremes and humidity in order to avoid dehydration. (AR 122-125, 139-140.)

## II. The ALJ's RFC Assessment

In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record. *Robbins v. Soc. Sec. Admin.,* 466 F.3d 880, 883 (9th Cir. 2006). The ALJ need not include properly rejected evidence or subjective complaints. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004). The Court considers the ALJ's determination in the context of "the entire record as a whole," and if the "evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008) (internal quotation marks omitted).

As set forth in detail above, the ALJ considered all of the medical evidence as well as the medical opinions. With respect to Plaintiff's mental impairment, the ALJ concluded that Plaintiff has a mild limitation in understanding, remembering, or applying information. In particular, the ALJ noted that Plaintiff's initial examination showed difficulty with serial sevens, but subsequent examinations showed that she performed well with treatment. (AR 20.) Next, the ALJ concluded that Plaintiff has a moderate limitation in interacting with others, noting that despite Plaintiff's assertion that she became easily frustrated and irritated with family and friends, she later reported decreased symptoms and having a strong support system. (AR 21.) The ALJ next found that Plaintiff has a moderate limitation in her ability to concentrate, persist, or maintain pace, citing Plaintiff's mental status exams after she began medication. (AR 21.) Finally, the ALJ concluded that Plaintiff has a mild limitation in her ability to adapt or manage herself, noting that she went to church multiple times a week, had been teaching children at church on Sundays for several years, had exercised at a gym, and was able to prepare meals, do laundry and use public transportation. (AR 21; *see* AR 316-318.)

The ALJ found the opinions of the State agency physicians were consistent with the record and restricted Plaintiff to simple routine tasks. However, the ALJ gave Plaintiff's allegations of isolation and problems with people "the benefit of the doubt" and incorporated into the RFC additional limitations in interacting with others. (AR 22.)

The ALJ's determination that Plaintiff's mental impairments restricted her to unskilled work with limited contact with others is supported by substantial evidence including, among other things, the treatment notes consistently reflecting that Plaintiff's mental health symptoms were well-controlled by medication.

With regard to the medical opinions, the ALJ's RFC is consistent with and supported by the opinions of the State agency physicians. In large part, the ALJ's RFC assessment is also consistent with Dr. Gilman's opinion. While the ALJ rejected

Dr. Gilman's opinions regarding absenteeism and break needs, Plaintiff does not argue that the ALJ committed error in doing so. Indeed, Plaintiff explicitly objects to Dr. Gilman's opinions that she would be off task 10% of the workday, absent 3 days a month, and able to perform at 50% efficiency. (ECF No. 19 at 3.) According to Plaintiff, Dr. Gilman's opinion should be disregarded because Dr. Gilman is a psychiatrist who essentially prescribed medication (rather than a psychologist or therapist) and because she only infrequently met with Plaintiff and, even then, engaged in limited interaction with Plaintiff. (ECF No. 19 at 3.) Thus, Plaintiff's arguments challenging the weight to be afforded Dr. Gilman's opinion supports the ALJ's determination to discount some of those opinions.

As for Plaintiff's physical impairments, the ALJ noted the mild objective findings of tenderness to palpation, but otherwise full range of motion of the neck, back, and shoulder, and elbow. (AR 25, 816-817.) Furthermore, the ALJ relied upon the opinion of examining physician Dr. Altman, as well as the opinions of the non-examining Stage agency physicians. (AR 25-26.) These opinions constitute substantial evidence supporting the ALJ's RFC determination. *See Thomas v. Barnhart*, 278 F.3d 947, 958-959 (9th Cir. 2002) ("opinions of non-treating or non-examining physicians may also serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record"); *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (consultative examiner's opinion on its own constituted substantial evidence, because it rested on independent examination of claimant).

Plaintiff complains that Dr. Altman examined her after the hearing and that his examination "consisted of pricking my fingers + toes with an unbent paper clip and looking at + feeling my neck and back. No x-rays, ultrasound were taken to back up his diagnosis." (ECF No. 19 at 2.) Plaintiff raised the same objections to the ALJ, who rejected them. The ALJ noted that Dr. Altman performed a physical examination and his opinion was consistent with the entire record. (AR 25-26.) Plaintiff also

further alleges that the conclusion that she is able to lift 50 pounds occasionally and 25 pounds frequently and can stand for 6 hours in an eight-hour workday are "absolutely false as well documented by records of advancing age (60 now), obesity, high blood pressure, bi-polar II, anxiety + depression and the stupefying effects of the medications!" (ECF No. 19 at 3.) At best, Plaintiff's arguments amount to a disagreement as to how the evidence should be interpreted. However, so long as the ALJ's interpretation of the record is rational and supported by substantial evidence, which it is here, the Court may not disturb it. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) ("[I]f evidence is susceptible of more than one rational interpretation, the decision of the ALJ must be upheld"); *see generally Biestek v. Berryhill*, 139 S. Ct. 1149, 1154 (2019) (observing that in the social security context, the threshold for "substantial evidence" is "not high").

For the foregoing reasons, the ALJ's RFC assessment must be affirmed. *See Bayliss*, 427 F.3d at 1217 ("We will affirm the ALJ's determination of Bayliss's RFC if the ALJ applied the proper legal standard and his decision is supported by substantial evidence.").

### III. Plaintiff's Remaining Contentions

Several other of Plaintiff's contentions warrant brief discussion. First, Plaintiff states that, after the ALJ issued her decision, Plaintiff was diagnosed with fibromyalgia and bulging and herniated discs in her neck. According to Plaintiff, she "had these conditions at the time of [the] hearing but had not yet been properly diagnosed due to the lag in referrals etc. in the medical system." (ECF No. 19 at 2-3.)[3] To the extent that Plaintiff contends that she has new impairments or that her condition deteriorated since the time of the ALJ's decision, her contentions are outside of this Court's review. *See generally Harman v. Apfel*, 211 F.3d 1172, 1177 (9th Cir. 2000) ("judicial review in cases under the Social Security Act is limited to

---

[3] Plaintiff states that the related records and ultrasound "are included," (ECF No. 19 at 2), but she has not presented them to this Court.

a review of the administrative record for a determination of whether the Commissioner's decision is supported by substantial evidence in the record"); *London v. Colvin*, 2014 WL 12557986, at *7 (C.D. Cal. Dec. 29, 2014) (the Court lacks jurisdiction to reverse the Commissioner's decision based on evidence that is not part of the administrative record).

Second, Plaintiff disagrees with the VE's opinion that she is capable of performing specific jobs. According to Plaintiff, considering her physical and mental impairments, it is impossible for her to perform the jobs identified by the VE. (ECF No. 19 at 3-4.) Plaintiff's argument is unavailing. The hypothetical that the ALJ posed to the VE contained all of the limitations that the ALJ found credible and supported by substantial evidence in the record. Accordingly, the ALJ's reliance on the VE's testimony was proper. *See Bayliss*, 427 F.3d at 1217-1218 (ALJ properly relied on VE testimony where hypothetical posed to VE contained all limitations the ALJ found credible and supported). Contrary to Plaintiff's suggestion, the ALJ was not required to include limitations that were not in her RFC assessment. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). Essentially, Plaintiff's argument merely restates her disagreement with the ALJ's RFC determination.

Finally, Plaintiff mentions that her medications cause drowsiness and have "stupefying effects." (ECF No. 19 at 3-4.) Even liberally construed, these assertions do not fairly present a claim that the ALJ erred in discounting Plaintiff's testimony. *See, e.g., DeBerry*, 352 F. App'x at 176 (declining to consider claim that ALJ failed properly to apply Social Security Ruling where claimant did not argue the issue "with any specificity" in her opening brief and failed to cite "any evidence or legal authority" in support of her position); *Nazarian*, 2018 WL 2938581, at *4 (plaintiff "provides no specific argument regarding how the ALJ in this case specifically erred in such respect, and thus fails to persuade the Court that a remand is warranted on such conclusory grounds"); *Moody v. Berryhill*, 245 F. Supp. 3d 1028, 1033 (C.D. Ill. 2017) (where plaintiff does not clearly identify the ALJ's problematic findings or

legal support, court "cannot fill the void by crafting arguments and performing the necessary legal research"). Moreover, the Court notes that the ALJ discussed Plaintiff's subjective complaints, including her allegations regarding medication side effects, but rejected them. The ALJ provided several reasons for discounting Plaintiff's credibility, including (a) Plaintiff's contradictory statements in treatment records in which she reported that the medications worked and that she tolerated them well; (b) contradictions between Plaintiff's allegations and the medical record that showed Plaintiff's symptoms responded to treatment; (c) inconsistency between Plaintiff's allegations of disabling symptoms and her ability to perform daily activities including preparing meals, attending church multiple times a week, and teaching classes on Sundays; and (d) the lack of objective medical evidence. The ALJ also noted evidence that Plaintiff stopped working because the woman she was caring for moved away. (AR 20-26; *see* AR 651, 718.) In sum, Plaintiff has not presented a legitimate challenge to the ALJ's credibility determination and the Court's review does not suggest that the ALJ erred. *See, generally, Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (factors ALJ may consider when making credibility determination include lack of objective medical evidence, claimant's treatment history, claimant's daily activities, and inconsistencies in testimony).

**ORDER**

IT IS THEREFORE ORDERED that Judgment be entered affirming the decision of the Commissioner and dismissing this action with prejudice.

DATED: 12/11/2019

_____
ALEXANDER F. MacKINNON
UNITED STATES MAGISTRATE JUDGE